STATE OF CONNECTICUT *v.* VINROY HINES
(AC 33552)

DiPentima, C. J., and Robinson and Mihalakos, Js.

Argued April 25—officially released June 26, 2012

*Richard E. Condon, Jr.,* senior assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.,* senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy,* state's attorney, and *Robin D. Krawczyk,* senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Vinroy Hines, appeals from the judgment of conviction, rendered after a jury trial, of criminal attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1), two counts of assault in the second degree in violation of General Statutes § 53a-60 (a) (2), kidnapping in the first degree in violation of General

Statutes § 53a-92 (a) (2) (A) and criminal violation of a protective order in violation of General Statutes § 53a-223 (a). On appeal, the defendant claims that the trial court committed reversible error when it failed to provide the jury with the statutory definition of "abduct" as set forth in General Statutes § 53a-91 (2)[1] in its instruction on the charge of kidnapping in the first degree in violation of § 53a-92 (a) (2) (A).[2] We disagree and, accordingly, affirm the judgment of the trial court.

The record discloses the following facts and procedural history. The defendant and Denise Watson, the victim, were in a romantic relationship and had two children together. The victim and their two children resided in a family shelter in East Hartford, but often stayed with the defendant in his apartment in Bridgeport. On January 1, 2009, the defendant and his cousin, Conray Jones, arrived at the family shelter to take the victim and their children to Bridgeport. On the way to Bridgeport, the group stopped to eat at a restaurant. While sitting next to the victim in the backseat of Jones' car, which was parked outside the restaurant, the defendant began talking to the victim and then suddenly struck her on the nose with a beer bottle. Jones then proceeded to drive the group toward Bridgeport. For the first thirty minutes of the drive, the defendant remained in the backseat with the victim and their two children, punching the victim in the head, back and shoulder. Once in the New Haven area, the defendant produced a box cutter and repeatedly stabbed the victim on various parts of her body. He put the box cutter

---

[1] General Statutes § 53a-91 (2) states: " 'Abduct' means to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where he is not likely to be found, or (B) using or threatening to use physical force or intimidation."

[2] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . ."

near the victim's face and told her that, when they arrived in Bridgeport, he would "pop off [her] head and pop off his head."

Throughout the ride, the defendant asked Jones to pass him a knife. When Jones told the defendant that he did not have one, the defendant reached into the front of the car and opened the glove compartment in front of the passenger seat. In fear that the defendant was reaching for a knife with which to stab her, the victim slid behind the defendant and jumped out of the car, which was traveling at a speed of sixty-five miles per hour. Jones continued to drive the defendant and the children to Bridgeport. Meanwhile, the victim was rescued from the side of the road by a passing driver who drove the victim to a gas station where she called the police. The victim was taken to the hospital where she was treated for a broken nose and toe, two one-half inch lacerations on her scalp and multiple contusions and abrasions from contact with the road.

Thereafter, the defendant was arrested and charged by long form information, dated September 15, 2009, with the five aforementioned offenses, and, in addition, two counts of kidnapping in the second degree in violation of General Statutes § 53a-94 (a). On September 22, 2009, before the jury was sworn in, the court indicated to the parties that it had begun working on the jury instructions and asked the defendant if he had begun thinking about lesser included offenses. The state then presented its case-in-chief, which was completed on September 23, 2009. On that same day, the defendant filed a request to charge in regard to the two counts of kidnapping in the second degree under § 53a-94 (a) contained in the long form information. The request to charge included, inter alia, the statutory definition of "abduct." Later that day, after the state presented its case-in-chief, the defendant moved for a judgment of acquittal as to all charged crimes. The court granted

the motion with respect to the two counts of kidnapping in the second degree, but denied the motion with respect to the five remaining charges. As a result, the state filed a substitute information, dated September 24, 2009, charging the defendant with the foregoing five counts.

The defendant then presented his case, which he completed on September 24, 2009. The state indicated that it would not be presenting any rebuttal witnesses. After the closing arguments, the jury was removed from the courtroom in order for the court and the parties to review the jury instructions and make certain changes before the court presented the instruction to the jury. The court returned the jury to the courtroom and read to them the final charging instruction, including the charge of kidnapping in the first degree. The instruction on the count of kidnapping in the first degree included the elements of the crime as set forth in § 53a-92 (a) (2) (A). The court stated in relevant part: "The first element is the defendant abducted another person using or threatening to use physical force or intimidation. The defendant does not need to actually use force. He need only threaten to use force in such a manner that [the victim] reasonably believed that force would be used if she tried to escape. . . . In abducting [the victim], the defendant must have specifically intended to prevent her liberation. A person acts intentionally with respect to a result when his conscious objective is to cause such result." The court then went on to explain the second element of the crime, which, it stated, was that "the defendant abducted [the victim] with the specific intent to inflict physical injury on the person."

The case was committed to the jury, which returned a verdict of guilty on all counts contained in the substitute information. The court rendered judgment in accordance with the jury verdict and sentenced the defendant

to a total effective sentence of eighteen years in prison and seven years of special parole.

The defendant's sole claim on appeal is that the court denied him his constitutional right to a fair trial because it did not provide the jury with the statutory definition of "abduct" when it instructed the jury on the charge of kidnapping in the first degree. The state argues that this claim is not reviewable. Because the defendant raised no objection at trial to the court's exclusion of the statutory definition of "abduct" in the jury instruction of kidnapping in the first degree, his claim is unpreserved.[3] The defendant asserts, however, that he is entitled to a new trial because he has satisfied the requirements of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), in which our Supreme Court has held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.)

---

[3] The defendant argues that his claim of instructional error is preserved on the basis that he filed a request to charge on two counts of the crime of kidnapping in the second degree, dated September 23, 2009, in which he expressly requested the court to instruct the jury on the statutory definition of "abduct." This argument is unavailing. That same day, the court granted the defendant's motion for a judgment of acquittal on the two counts of kidnapping in the second degree. Thereafter, the defendant did not indicate that the statutory definition of "abduct," included in his request to charge in regard to the crime of kidnapping in the second degree, should be included in the court's instruction to the jury on the charge of kidnapping in the first degree. Nor does the defendant offer any law in support of his position that a claim of instructional error can be preserved in this way. We, therefore, conclude that the defendant's claim of instructional error on appeal was not properly preserved.

The state argues that the defendant has failed to establish a constitutional violation under the third prong of *State* v. *Golding*, supra, 213 Conn. 239–40. To this end, the state asserts that the defendant has (1) impliedly waived his claim on appeal on the basis that the defendant failed to take exception to the jury instruction on the charge of kidnapping in the first degree despite having: (a) been on notice that the jury instruction of kidnapping in the first degree did not contain the statutory definition of "abduct" as evidenced by the fact that he reviewed the charge immediately prior to the court presenting the final instruction to the jury and (b) been aware of, and considered the statutory definition of "abduct," as evidenced by the fact that he had, one day prior, requested the court to instruct on that definition in regard to the two counts of kidnapping in the second degree. In the alternative, the state argues that (2) if we determine that the defendant did not waive his claim of instructional error, then the defendant's claim must fail because when the jury instructions are read as a whole, it is clear that the defendant's due process rights were not violated by the failure of the court to provide the jury with the statutory definition of "abduct."

We agree with the state's argument that the defendant cannot prevail because he has failed to establish that the jury instruction delivered by the court constitutes a constitutional violation.[4] Although we disagree with

[4] We are not persuaded by the state's claim that the defendant has impliedly waived his claim of instructional error on appeal. "[W]hen the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011). "[A] defendant will not be deemed to have waived [an instructional] claim unless the court has provided counsel with a copy of the proposed instructions and a *meaningful opportunity* for review and comment, which can be determined in any given case only

the defendant on the merits of his claim, we nonetheless agree with his position that the record is adequate for our review and that his claim is of constitutional magnitude. Accordingly, we consider his claim under our standard of review. "When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . *[T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper.* . . . [I]n appeals involving [an alleged] constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions,

by a close examination of the record. The significance of a meaningful opportunity for review and comment cannot be underestimated." (Emphasis in the original.) Id., 495 n.28.

Our review of the record does not indicate that there was a charge conference in which the jury instruction was discussed, but only that the court reviewed the court's proposal of the jury instructions with the parties immediately before the instruction was given to the jury. During this time, the defendant had only a brief opportunity to except to the charge of kidnapping in the first degree on the basis that he now advances on appeal. We therefore conclude that the defendant was not given a meaningful opportunity for review and comment and that he did not waive his claim of instructional error on appeal. See id. ("[h]olding an on-the-record charge conference, and even providing counsel with an advance copy of the instructions, will not necessarily be sufficient in all cases to constitute waiver of *Golding* review if defense counsel has not been afforded adequate time, under the circumstances, to examine the instructions and to identify any potential flaws"); see also *State* v. *Collins*, 299 Conn. 567, 597, 10 A.3d 1005, cert. denied, U.S.    , 132 S. Ct. 314, 181 L. Ed. 2d 193 (2011).

the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Emphasis added; internal quotation marks omitted.) *State* v. *Reid*, 254 Conn. 540, 559, 757 A.2d 482 (2000).

The jury instruction as delivered by the court fairly presented the case to the jury. The court instructed the jury on every element of the crime of kidnapping in the first degree in violation of § 53a-92 (a) (2) (A), which requires the state to prove beyond a reasonable doubt that the defendant (1) abducted and restrained the victim with (2) the intent to inflict physical injury. Under § 53a-91 (2), "abduct," in relevant part, means "to restrain a person with intent to prevent his liberation by . . . using or threatening to use physical force or intimidation." Although the court did not define "abduct," the jury would have understood the meaning of the term from the instruction given by the court. The court indicated, for example, that "[i]n abducting [the victim], the defendant must have specifically intended to prevent her liberation." The court also stated, to find the defendant guilty, the jury must find that "the defendant abducted another person using or threatening to use physical force or intimidation. The defendant does not need to actually use force. He need only threaten to use force in such a manner that [the victim] reasonably believed that force would be used if she tried to escape." The instruction of the court, therefore, indicates that "abduct," consistent with its statutory definition, means to prevent one's liberation through

the use of force or the threat of force or intimidation. As a result, the jury would have understood what was required, under the statutory definition, to find that the defendant had abducted the victim. Accordingly, we conclude that the jury instruction of the court on the crime of kidnapping in the first degree did not deprive the defendant of a fair trial under the third prong of *State* v. *Golding*, supra, 213 Conn. 239–40.

The judgment is affirmed.

In this opinion the other judges concurred.